IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YETI COOLERS, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:23-CV-79-RP |
| LOVE DEALS INC. and ENDLISS TECHNOLOGY INC., | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants Love Deals Inc. ("Love Deals") and Endliss Technology Inc.'s ("Endliss") (collectively, "Defendants") Motion to Dismiss or Transfer in the Alternative, (Dkt. 14), and Plaintiff Yeti Coolers, LLC's ("Yeti") motion for leave to file a surreply, (Dkt. 27). Having considered the parties' briefs, the record, and the relevant law, the Court will deny the motion to dismiss and grant the motion for leave.

## I. BACKGROUND

Yeti is a Delaware company with its principal place of business in Austin, Texas. (Compl., Dkt. 1, at 2). Yeti designs, develops, and manufactures drinkware products, including its trademarked "Rambler Tumblers." (*Id.* at 4). It owns trade dress rights in the design and appearance of these 20oz and 30oz tumblers and has continuously and extensively marketed and sold these tumblers across the country, including in Texas. (*Id.*).

Defendants are two sister corporations with their principal place of business in Hayward, California. (*Id.* at 2). According to the complaint, Defendants sell drinkware products online, including a 20oz Tumbler and a 30oz Tumbler. (*Id.* at 8–9). They promote, advertise, offer to sell, and manufacture or distribute these tumblers in the United States. (*Id.*).

1

On January 25, 2023, Yeti brought suit against Defendants, alleging that they are marketing, promoting, selling, and distributing tumblers that violate Yeti's trade dress rights. (*Id.* at 7–8). Yeti alleges that these drinkware products are "confusingly similar imitations" of their own tumblers and sold without Yeti's consent. (*Id.*). Yeti's causes of action include trade dress infringement, trade dress dilution, and unfair competition and false designation of origin, all under 15 U.S.C. § 1125. (*Id.* at 14–19).

On April 21, 2023, Defendants jointly moved to dismiss Yeti's complaint for lack of personal jurisdiction and improper venue. (Mot. Dismiss, Dkt. 14). In their motion, Defendants argue that they lack sufficient connections with Texas to establish specific jurisdiction in the state. (*Id.*). Because neither company is incorporated in Texas nor has its principal place of business in the state, Defendants also contest general jurisdiction. (*Id.*). In support of their motion, Defendants rely principally on the declaration of Sen Cai, the Chief Financial Officer of Endliss. (Cai Decl., Dkt. 14-1).

Although the two Defendants are sister companies, their product sales and distribution appear to vary slightly. As to Endliss, Defendants allege the following facts: Endliss does not have a Texas taxpayer number. (*Id.* at 3). Endliss has no business presence in Texas. (*Id.* at 5). Endliss' marketing and sales of the infringing tumblers occur exclusively through its storefront on Amazon.com, and the company does not sell products of any kind directly to consumers. (*Id.* at 5–6). While Endliss does maintain its own website, atlinsport.com, that site does not sell its products, and instead refers interested purchasers to the company's Amazon storefront. (*Id.*).

As to Love Deals, Defendants admit that the company does have a Texas taxpayer number. (*Id.* at 10). Like Endliss, however, Love Deals has no physical business presence in the state. (*Id.*). Love Deals does not market or sell the infringing tumblers (or other products) directly to Texas

residents. (*Id.* at 11). In fact, Love Deals contends that it "simply does not advertise or sell the Accused Tumblers" and that it "has not sold products" to Texas retailers. (*Id.*).

Yeti strongly disputes these statements, and instead accuses Defendants of downplaying and hiding their sales in Texas. (Pl.'s Resp., Dkt. 19, at 1). According to Yeti, Endliss sells the infringing tumblers on a different website also owned by the company, "us.maxboostpower.com" which has an option select shipping to Texas (and was not mentioned in their motion to dismiss). (*Id.* at 3). Love Deals, meanwhile, promotes the infringing tumblers though its website, trianium.com, and directs consumers to buy the products on its Amazon page. (*Id.* at 4). Yeti further alleges that both Defendants have registered to do business in Texas and that Love Deals has a Registered Agent with a Registered Office in Austin. (*Id.* at 6).[1] Yeti argues that the sales of its tumblers through Amazon and the companies' own websites are sufficient to establish specific jurisdiction in the state. (*Id.* at 8–12).

The Court held a hearing on the motion on July 18, 2023. (Minute Entry, Dkt. 32). At the hearing, the parties contested whether Endliss has a Texas taxpayer number and whether the website us.maxboostpower.com sells the infringing products. (*Id.*). The Court adjourned the hearing, noting that personal jurisdiction would exist even if Defendants' contested factual allegations were taken as true and that any remaining factual disputes could be resolved during discovery. (*Id.*).

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(2). On such a motion, "the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185,

---

[1] In their reply brief, Defendants do not dispute that Endliss does have a Texas taxpayer number. (Defs.' Reply, Dkt. 25). At the Court's hearing, however, counsel for Endliss stated that it does not have a taxpayer number. (Minute Entry, Dkt. 32).

3

1192 (5th Cir. 1985). The court may determine the jurisdictional issue "by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.*

But when, as here, the Court rules on the motion without an evidentiary hearing,[2] the plaintiff need only present a *prima facie* case that personal jurisdiction is proper; proof by a preponderance of the evidence is not required. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Id.* Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

### B. Motion to Transfer

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As such, "[t]he threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, the Court turns to consideration of "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

---

[2] The Court held a hearing on the matter on July 18, 2023. (Minute Entry, Dkt. 32). However, the hearing was focused on the veracity of Defendants' allegations rather than the competing evidence offered by the parties.

The relevant factors include matters of both private and public interest. *Volkswagen AG,* 371 F.3d at 203; *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private-interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical problems that make the case's trial easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public-interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict-of-law problems involving the application of foreign law. *Id.* No single factor is dispositive. *Id.*

The Court must also "give some weight to the plaintiffs' choice of forum." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013). However, the plaintiff's venue choice "is neither conclusive nor determinative. *In Re: Horseshoe Entertainment*, 337 F. 3d 429, 434 (5th Cir. 2003). Rather, the party seeking transfer must show "good cause": a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *Humble Oil & Refining Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). Thus, when the transferee venue is "not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). But when the movant demonstrates that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id.*

## III. DISCUSSION

Defendants' motion raises contested issues of both fact and law. The factual issues largely turn around whether Defendants have engaged in discrete activities that could support personal

5

jurisdiction in Texas, such as selling products through their own websites to the state. The legal issues boil down to (1) whether sales through Amazon.com can establish personal jurisdiction, and (2) whether the relevant factors weigh in favor of transfer to the Northern District of California. (Mot. Dismiss, Dkt. 14). The Court will first address personal jurisdiction and the relevant contested facts before turning to the motion to transfer.

### A. Motion to Dismiss for Lack of Personal Jurisdiction

The parties' briefing raises two main factual disputes: whether Endliss has a Texas taxpayer number, and, more importantly, whether the two Defendants maintain websites that allow consumers to buy products directly and have them shipped to Texas. Defendants maintain that Endliss does not have a taxpayer number, while Yeti contends that it does, and includes an affidavit showing the existence of a taxpayer number on the Texas comptroller website. (Hicks Decl., Dkt. 19-89). As to the Defendants' websites, Defendants state in a single declaration that they do not sell the products though us.maxboostpower.com. (Cai Decl., Dkt. 14-1). Yeti, however, submits a declaration showing that it was able to purchase a tumbler through the website. (Hicks Decl., Dkts. 19-1 to 19-26).[3] As Yeti has supported its factual allegations through specific evidence, it has made (at least) the minimum prima facie showing needed to accept its statements as true at the 12(b)(2) stage. *See Loloi, Inc. v. Lolo Imports, LLC*, No. 18-2315, 2019 WL 5887351, at *3 (N.D. Tex. Aug. 2, 2019), *adopted*, 2019 WL 5887218 (N.D. Tex. Aug. 27, 2019) (noting that a plaintiff need only make a prima facie showing of jurisdiction at the pleading stage). Because "conflicts between the facts contained in the parties' affidavits will be resolved in the plaintiff's favor" at this stage, the Court accepts as true that Endliss has a Texas taxpayer number and operates a website that allows consumers to directly purchase products to be shipped into Texas. *See Viahart, LLC v. Does 1-54*,

---

[3] At the hearing, Yeti noted that it had not finished the purchase because it did not want to face accusations that it had manufactured jurisdiction, but that it was able to add the tumbler to its cart, enter its address and payment, and go through every step of the sale short of actually purchasing. (Minute Entry, Dkt. 32).

6:18-CV-604-RWS-KNM, 2022 WL 4138590 at *4 (E.D. Tex. July 18, 2022), *adopted*, 6:18-CV-00604-RWS, 2022 WL 4137278 (E.D. Tex. Sept. 12, 2022).[4]

Ultimately, however, viewing the facts in favor of Yeti is not needed for it to establish personal jurisdiction because Defendants' motion can be denied even on the mutually agreed upon facts. Both parties admit that Defendants sell the tumblers though Amazon, specifically a program called "Fulfillment by Amazon" ("FBA"). (Mot. Dismiss, Dkt. 14, at 5–8; Pl.'s Resp., Dkt. 19, at 9). Each page has tens of thousands of reviews, and exhibits provided by Yeti shows dozens of reviews from purchases in Texas. (Hicks Decl., Dkt. 19-61 to 19-65). It is uncontroverted that Defendants have sold dozens, if not hundreds or thousands, of the infringing tumblers into Texas through FBA.

As Yeti points out, nearly all district courts to tackle the issue have found that repeated purchases through FBA into a state establishes that state's specific jurisdiction over those products. *See, e.g., Telebrands Corp. v. Mopnado*, No. 14-7969, 2016 WL 368166, at *6-7 (D.N.J. Jan. 12, 2016), *adopted*, 2016 WL 355072 (D.N.J. Jan. 28, 2016); *Leach v. Pharmedoc Inc.*, No. 16-1034, 2017 WL 943959, at *2 (W.D. Okla. Mar. 9, 2017) (sales "through amazon.com and shipped through Amazon's fulfillment services . . . to Oklahoma residents are properly attributed to defendant when determining whether it has purposefully directed its activities at Oklahoma residents"); *EnviroCare Techs., LLC v. Simanovsky*, No. 11-3458, 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012) ("Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they

---

[4] On July 21, 2023, after the parties' briefing on the motion to dismiss was complete, Defendants filed an advisory regarding the contested factual issues. (Advisory, Dkt. 33). Defendants state that the taxpayer number was mistakenly added to the Texas comptroller website and that Endliss does not in fact have any such number. (*Id.*). As to the us.maxboostpower.com website, Defendants admit that the site can sell products into Texas, but that no such purchases have actually been made. (*Id.*). While this advisory adds clarity to the factual disputes, it does not affect this Court's analysis. In particular, the registration of a taxpayer number is, at most, an ancillary consideration regarding personal jurisdiction. In particular, the registration of a taxpayer number is, at most, an ancillary consideration regarding personal jurisdiction. *See, e.g.*, *Williams v. Portfolio Recovery Associates, LLC*, 3:11-CV-2421-B, 2012 WL 5986426 at *3 (N.D. Tex. Nov. 29, 2012) ("The fact that Defendant PRAI has a Texas tax number is not dispositive of the [personal jurisdiction] issue . . . ."). Meanwhile, the admission that the website can sell goods into Texas would only serve to boost jurisdiction, which as explained in this order, independently exists due to Defendants' Amazon sales in Texas.

7

purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it."); *Carson Optical, Inc. v. RQ Innovasion Inc.*, No. 16-1157, 2020 WL 1516394, at *3 (E.D.N.Y. Mar. 30, 2020) ("When the internet sales at issue occur through third-party websites such as Amazon, and the defendants merely post their items on that website and then ship their goods to an Amazon fulfilment center before Amazon ultimately sends the goods to consumers, jurisdiction is still proper."); *Alticor, Inc. v. Phoebe's Choice, Inc.*, No. 21-271, 2022 WL 17480905, at *4 (W.D. Mich. Sept. 30, 2022) ("The fact that [defendant] conducts that business through Amazon doesn't shield it from personal jurisdiction any more than shipping products via FedEx would."); *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), *cert. denied*, 214 L. Ed. 2d 341 (Jan. 9, 2023) (noting that even one Amazon test purchase could subject a foreign defendant to personal jurisdiction in the state). Here, because Defendants have placed their products on Amazon as their storefront and repeatedly sold those products to customers in the state, they have purposefully availed themselves of jurisdiction in Texas.

Defendants nonetheless argue that these sales cannot support personal jurisdiction because these sales are "fortuitous" rather than "purposeful." (Mot. Dismiss, Dkt. 14, at 6–8). Defendants rely on two cases to suggest otherwise: *Viahart, LLC v. Arkview LLC*, 6:19-CV-00406, 2020 WL 4905542 (E.D. Tex. Aug. 20, 2020) and *Naughtys LLC v. Does 1-580*, 4:21-CV-492-O, 2022 WL 818993 (N.D. Tex. Mar. 3, 2022), *adopted*, 4:21-CV-00492-O, 2022 WL 816480 (N.D. Tex. Mar. 17, 2022). Neither is applicable to the facts here.

Starting with *Viahart*, the district court noted that plaintiffs had failed to provide "specific evidence" and "cite[d] almost no authority" in favor of personal jurisdiction. *Viahart v. Arkview*, 2020 WL 4905542 at *4. The court then discussed cases from the Federal Circuit, differentiated them on the basis of patent infringement, and found that plaintiff had failed to cite persuasive authority for

8

personal jurisdiction. That is not the case here, where Yeti has established repeated and frequent sales to Texas and provided ample caselaw in support of jurisdiction. (Pl.'s Resp., Dkt. 16).

In *Naughtys*, the district court rejected the notion that a single test purchase through Amazon could establish specific jurisdiction. *Naughtys LLC*, 2022 WL 818993 at *7. In fact, a closer read of *Naughtys* shows that personal jurisdiction *does* exist for a defendant who sells repeated products to actual customers in a state. *Id.* at *8 ("[Defendant] stands in stark contrast to a seller that is located in a foreign country and actually sold and shipped one or more allegedly Infringing Products on any of the Marketplaces to one or more buyers in Texas that were not Plaintiff or Plaintiff's investigator."). Here, Defendants' shipments into Texas are not limited to a single test purchase. Rather, the Defendants have repeatedly sold their infringing products into the state to real customers. Even under *Naughtys*, Defendants' activities support a finding of specific jurisdiction.

Finally, *Admar*, a recent Fifth Circuit decision on specific jurisdiction, does not apply to the instant case. *Admar Int'l, Inc. v. Eastrock, LLC*, 18 F.4th 783, 786 (5th Cir. 2021). In that case, the Fifth Circuit held that merely providing a website that was accessible in Louisiana could not establish personal jurisdiction in the state. *Id.* at 787–88. The court noted that the defendant "has not sold a single accused product to a Louisiana resident" and held that simply creating a website accessible in a state did not subject the company to jurisdiction in that state. *Id.* In the instant case, Defendants' situation is the complete reverse. According to their own arguments, Defendants do not maintain websites that sell their products, but have used Amazon to sell the products into Texas. Accordingly, *Admar*'s holding regarding the operation of a website is entirely inapplicable to Defendants' activities.[5]

---

[5] *Admar* also includes a footnote suggesting that a single product sale into a state is too isolated to establish jurisdiction. *Admar*, 18 F.4th at 788 n.1. Again, this is not the case here, where Defendants have had multiple and continuous sales into the state.

9

Nor would an exercise of personal jurisdiction offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). To determine whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice, courts consider: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006). The burden here is minimal, and while Defendants may prefer to litigate in their home state, they are not unfairly burdened simply by having to litigate in a state where they sold potentially infringing products. Nor do Defendants identify any particular burden that would counsel against jurisdiction. Texas has a strong interest in protecting its consumers from confusion and allowing its citizens to pursue remedies against unlawful infringement. *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 904 (N.D. Tex. 2000). Yeti, meanwhile, has a clear interest in pursuing remedies where the infringement takes place and where its principal place of business is located. Finally, jurisdiction in the state does not harm the efficient administration of justice nor the shared interest of both Texas and California in preventing consumer confusion. Because Defendants purposefully availed themselves of the forum and personal jurisdiction would not offend traditional notions of fair play and substantial justice, the Court will deny Defendants' motion to dismiss.

### B. Motion to Dismiss for Improper Venue

Defendants also move to dismiss for improper venue. (Mot. Dismiss, Dkt. 14, at 12). The motion to dismiss for improper venue collapses with the personal jurisdiction inquiry. Under 28 U.S.C. § 1391(b)(1), venue is proper "in a judicial district in which any defendant resides if all defendants are residents of the State in which the district is located." And a corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal

jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2). Defendants are subject to personal jurisdiction in Texas, making venue proper in this district.

### C. Motion to Transfer

In the alternative, Defendants request that the Court should transfer this action to the Northern District of California. (Mot. Dismiss, Dkt. 14, at 12–16). As a transfer motion under §1404, the Court weighs both the private and public interest factors. The private interest factors are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* On balance, the movant must show that the factors are "clearly more convenient" in the transferee district. *In re Planned Parenthood Fed. of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022).

First, sources of proof are present in both districts. Defendants' evidence related to the companies' sales and product design are in their principal place of business in California. (Mot. Dismiss, Dkt. 14, at 13–15). Yeti's evidence, meanwhile, is related to its trademark designs and the financial harm incurred by infringing products and primarily located in its headquarters in Texas. (Mot. Dismiss, Dkt. 14, at 14–15; Pl.'s Resp., Dkt. 19, at 22). Overall, because the sources of proof will come equally from each district, this factor is neutral. Likewise, compulsory processes are available in both districts, rendering that factor similarly neutral.

As to witnesses, the factor weighs in favor of the Western District of Texas. Defendants do not identify willing witnesses in California, apparently inadvertently omitting that argument from

their motion. (Mot. Dismiss, Dkt. 14, at 15). Yeti, however, does identify willing witnesses, including consumers of the infringing products, retailers, brand ambassadors, and the designers of Yeti's tumblers. Because Yeti has identified willing witnesses who would have a lower cost of attendance in the Western District of Texas, this key factor weighs against transfer. *See Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009) ("The relative convenience to the witnesses is often recognized as the most important factor under § 1404(a).").

As to the fourth factor, Defendants identify no other issues that weigh in favor of transfer. Instead, they argue only that transfer is warranted because the case remains at the pleading stage. (Mot. Dismiss, Dkt. 14, at 15). While a later stage of litigation might counsel against transfer, Defendants provide no support for the proposition that an early stage of litigation independently supports transfer. Again, this factor is neutral.

Turning to the public interest factors, the administrative difficulties arising from court congestion are neutral. As a median, the time to trial is six months faster in the Western District of Texas than the Northern District of California. *Align Techs. Corp. v. Atlassian US, Inc.*, No. 22-824, 2023 WL 1861220, at *4 (W.D. Tex. Feb. 9, 2023), *adopted*, 2023 WL 2957823 (W.D. Tex. Apr. 14, 2023). While the Western District of Texas as a whole may be slightly faster, the Austin division has a particularly heavy civil caseload. The undersigned has over 500 active civil cases and is the only active judge in Austin. Because the Western District's slightly faster trial time is offset by Austin's particularly heavy civil caseload, the factor is neutral.

Second, there is a local interest in deciding the issue in the Western District, as Texas has a local interest in protecting its consumers from confusion and protecting its corporations from unlawful infringement. *Am. Eyewear*, 106 F. Supp. 2d at 904. Third, both districts are familiar with actions for infringement and unfair competition. However, the Court is particularly familiar with Yeti's actions for trade dress infringement, having decided several previous cases involving the

company. (Pl.'s Resp., Dkt. 19, at 16 n.7 (collecting cases)). Finally, there are no issues involving foreign law.

Overall, most of the transfer factors are neutral. However, no factors weigh in favor of transfer, while the cost to willing witnesses—the most important digit—weighs against transfer. Accordingly, Defendants have not met their burden of showing that venue would be clearly more convenient in the Northern District of California, and the Court will deny their motion to transfer.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' motion to dismiss or transfer in the alternative, (Dkt. 14), is **DENIED**. Yeti's motion for leave to file a surreply, (Dkt. 27), is **GRANTED**.

**SIGNED** on July 24, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE